IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL J. HOFFMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-17-2431 |
| HOLLY HOOVER, CRNP, | * | |
| Defendant. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Holly Hoover, CRNP's Motion for Summary Judgment (ECF No. 105). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motion.[1]

## I.   BACKGROUND

### A.   Factual Background[2]

Plaintiff Michael J. Hoffman alleged in his Complaint that Robustianno Barrera, M.D., Mahboob Ashraf, M.D., Krista Self (f/k/a Bilak), N.P., Holly Hoover, N.P., William Beeman, R.N., and Stacie Mast, R.N. (collectively, "Medical Defendants") ignored his complaints of pain, denied him pain medication, and refused to refer him to a provider for additional treatment while he was incarcerated at the North Branch Correctional Institution

---

[1] Also pending before the Court is Plaintiff Michael J. Hoffman's Consent Motion for Extension of Time to File His Opposition Memorandum to Defendant's Motion for Summary Judgment (ECF No. 106). The Court will grant the Motion nunc pro tunc.

[2] The Court outlined Hoffman's initial allegations in detail in its March 26, 2019 Memorandum Opinion. (See Mar. 26, 2019 Mem. Op. at 2–9, ECF No. 49).

("NBCI") in Cumberland, Maryland. (Compl. ¶¶ 1, 11, 14–16, 21, 34–35, 50, ECF No. 1). Hoffman further alleged that Medical Defendants denied him necessary medical treatment and made false claims against him in retaliation for the grievances he filed against them. (Id. at 26). On September 17, 2020, the Court dismissed Hoffman's claims against all Defendants except Hoover and dismissed Hoffman's claims under the Eighth Amendment to the United States Constitution altogether, leaving Hoffman with one remaining claim against Hoover for unlawful retaliation in violation of the First Amendment to the United States Constitution. (See Sept. 17, 2020 Mem. Op. ["2020 Op."] at 28–36, ECF No. 77). That claim progressed to discovery.

During all times relevant to this action, Hoffman was a prison inmate confined at NBCI. (Dep. Michael Hoffman ["Hoffman Dep."] at 10:12–11:18, ECF No. 105-2). In April 2016, Hoffman underwent a CT scan and bone scan that revealed a "[f]ew scattered reticular densities in the periphery of the lungs" consistent with a possible diagnosis of chronic interstitial lung disease. (Hoffman Medical Rs. ["Med. Rs."] at 13–15, ECF No. 19-4). Hoffman continued receiving care and monitoring relating to this diagnosis over the following months. (Id. at 16–37). On September 30, 2016, Hoffman filed an administrative remedy procedure ("ARP") complaint against Hoover, a nurse practitioner at NBCI, based on a medical visit that occurred on September 26, 2016. (Sept. 30, 2016 ARP at 1, ECF No. 109-2). In the ARP complaint, Hoffman alleged that during the visit, Hoover denied him medical treatment for his lung disease and refused to provide him results of a lung x-ray conducted earlier in the month. (Id. at 1–2).

Less than three weeks later, Hoffman submitted an additional ARP complaint alleging that Hoover again provided him inadequate medical care. (Oct. 17, 2016 ARP at 1, ECF No. 109-3). This complaint related to an October 14, 2016 visit with Hoover during which Hoffman argued that he needed to see a doctor to treat the pain in his chest and lungs. (Id. at 1–2). According to Hoffman, Hoover demurred, insisting that she was a doctor. (Id.). Hoffman threatened to write her up and Hoover responded that Hoffman should "join the club." (Id.). Hoover's notes reflect that Hoffman became angry with her during this visit and stated "I am in pain[,] Holly. Give me something now!" (Med. Rs. at 37).

At the time Hoffman filed his complaints, ARP complaints relating to medical care at NBCI were assigned to Ryan Browning, L.P.N. (Ryan Browning Dep. ["Browning Dep."] at 14:9–15:12, ECF Nos. 105-6, 109-4). On October 26, 2016, Browning interviewed Hoffman regarding his September 30, 2016 ARP. (Id. at 37:10–20). Browning asserts that during the interview, he became concerned about Hoffman's "body language" when discussing Hoover, including Hoffman "[clenching] his fist extremely hard to where you could see the muscles, gritting his teeth, [and] talking through his teeth, in an angry tone." (Id. at 49:6–21). Browning concedes, however, that Hoffman never actually threatened Hoover. (Id. at 45:18–47:3). Browning further concedes that he "didn't actually believe Mr. Hoffman was a threat to Ms. Hoover" and, indeed, "never thought Mr. Hoffman was a threat to anyone." (Id. at 52:14–53:2).

Notwithstanding his determination that Hoffman did not pose a threat, Browning reported Hoffman's behavior during the interview to others at NBCI. Browning asserts that

3

he reported Hoffman's behavior to Beeman, the assistant director of nursing at NBCI, "out of an abundance of caution." (Id. at 52:17–20). Elsewhere in his deposition, Browning asserts that the "only two people" he was aware of speaking with regarding Hoffman's "clinched fist" were Beeman and Hoover. (Id. at 79:4–7). Browning explained that if the complaint warranted, he would contact medical providers involved or named in an ARP complaint to discuss the matter with them. (Id. at 42:5–43:17). Browning's testimony is unclear, however, as to when his conversation with Hoover occurred.

On October 27, 2016, the day after Browning interviewed Hoffman, then-Lieutenant George McAlpine made the decision to place Hoffman on administrative segregation. (George McAlpine Dep. ["McAlpine Dep."] at 63:1–65:1, 67:2–5, ECF Nos. 105-10, 109-6; Notice Assignment Administrative Segregation ["Admin. Seg. Not."] at 1, ECF No. 105-11). McAlpine asserts that he made the decision because he "believed" that Hoffman made a threat against Hoover. (McAlpine Dep. at 64:13–16). He does not, however, "have any recollection as to how [he was] given the information that Mr. Hoffman had allegedly made a threat against Ms. Hoover." (Id. at 64:4–12, 78:9–79:2). McAlpine states that although he "most likely" spoke with Hoover during his investigation, that conversation would have occurred after he placed Hoffman in administrative segregation. (Id. at 79:3–80:18). At the conclusion of McAlpine's investigation, he concluded that Hoffman did not pose a threat to Hoover and released him from administrative segregation. (Id. at 67:6–19).

For her part, Hoover maintains that she does not recall speaking to anyone about Hoffman's ARP complaint against her and had nothing to do with Hoffman being placed in administrative segregation. (Holly Hoover Dep. ["Hoover Dep."] at 40:20–53:13, 59:6–

4

60:20, ECF Nos. 105-3, 109-5). She eventually signed a document reflecting that she felt safe treating Hoffman, leading to his release from administrative segregation. (Id. at 40:2–19, 52:2–15; McAlpine Dep. at 59:10–17, 67:6–19).

**B.    Procedural History**

On August 24, 2017, Hoffman filed a Complaint against Medical Defendants and the Department of Public Safety and Correctional Services ("DPSCS") for failing to provide constitutionally adequate medical care for lung, bladder, knee, and foot issues and for retaliating against him for filing grievances. (ECF No. 1).

Medical Defendants filed their first Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("First Motion") on March 5, 2018. (ECF No. 19). DPSCS filed its own Motion to Dismiss on April 3, 2018. (ECF No. 30). On March 26, 2019, the Court granted DPSCS' Motion to Dismiss, terminating DPSCS from suit, and denied Medical Defendants' First Motion without prejudice. (See ECF Nos. 49, 50). The Court directed Medical Defendants to file a renewed motion to supplement the evidence in the record. (Mar. 26, 2019 Mem. Op. at 20, ECF No. 49). Because the Court instructed Medical Defendants to file a renewed motion, the Court deferred ruling on Hoffman's allegations related to treatment for urinary incontinence and degenerative bone disease. (Id. at 21 n.8).

On December 17, 2019, Medical Defendants filed a Renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 72). Hoffman filed an Opposition on January 8, 2020, (ECF No. 74), and Defendants filed a Reply on January 21, 2020, (ECF No. 75). On September 17, 2020, the Court dismissed Hoffman's claims against all Defendants except Hoover and dismissed Hoffman's claims under the Eighth

5

Amendment to the United States Constitution altogether, leaving Hoffman with one remaining claim against Hoover for unlawful retaliation in violation of the First Amendment to the United States Constitution. (See 2020 Op. at 28–36).

Following an exchange of discovery, on July 26, 2021, Hoover filed the instant Motion for Summary Judgment (ECF No. 105). On August 18, 2021, Hoffman filed an Opposition (ECF No. 109), and on August 26, 2021, Hoover filed a Reply (ECF No. 110).

## II.   DISCUSSION

### A.   Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment, unless the disputed fact is one that might affect the outcome of the litigation."). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**B.     Analysis**

Hoffman asserts that Hoover unlawfully retaliated against him in violation of the First Amendment of the United States Constitution and brings his claim under 42 U.S.C. § 1983, which provides a cause of action for constitutional violations. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). In order to set forth a colorable First Amendment retaliation claim under § 1983, a plaintiff must allege that: (1) he engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the plaintiff's First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). At bottom, the Court finds that Hoffman has failed to introduce evidence sufficient to create a genuine issue of material fact as to whether there was a causal connection between Hoffman's protected activity and the adverse action he experienced. Accordingly, the Court will grant summary judgment in favor of Hoover.

Hoffman has adequately established that he engaged in protected First Amendment activity. The Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017). Here, there is no dispute that Hoffman filed multiple ARP complaints relating to Hoover's allegedly deficient medical care. (Sept. 30, 2016 ARP at 1; Oct. 17, 2016 ARP at 1). Indeed, NBCI ultimately found Hoffman's September 30, 2016

ARP meritorious in part. (Sept. 30, 2016 ARP at 1). Thus, there exists ample evidence in the record to create a genuine dispute of material fact as to whether Hoffman engaged in First Amendment-protected activity.

Hoffman also has presented evidence that NBCI took an action that affected his First Amendment rights. For purposes of a First Amendment retaliation claim, a plaintiff suffers an adverse action where the defendant's conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Herron v. Harrison, 203 F.3d 410, 416 (6th Cir. 2000)). Here, Hoffman introduced evidence showing that, after he filed his ARP complaints against Hoover, NBCI placed him in administrative segregation for forty days. (Admin. Seg. Not. at 1; Hoover Dep. at 42:3–20). Certainly, "placing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights." Martin, 858 F.3d at 250 (quoting Herron, 203 F.3d at 416) (internal quotation marks omitted). As such, Hoffman has introduced evidence creating a genuine dispute of material fact as to the second element of his retaliation claim.

Hoffman has failed, however, to introduce meaningful evidence as to causation. In general, a plaintiff may demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action using circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. See Constantine, 411 F.3d at 501. Here, there is close temporal proximity between Hoffman's protected activity, which

occurred on September 30 and October 17, 2016, and his confinement to administrative segregation, which occurred on October 27, 2016.

The inference of causation attaching to close temporal proximity can, however, be "severed by . . . some legitimate intervening event." Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 348 (4th Cir. 2014); see also Richardson v. Univ. of Md. Shore Reg'l Health, Inc., No. SAG-21-669, 2021 WL 6064852, at *8 n.6 (D.Md. Dec. 22, 2021) ("[I]nstances of . . . legitimate, non-retaliatory, intervening events . . . sever the causal connection between the protected activity and the alleged retaliation."); Harik v. Wilson, No. AW-05-1182, 2006 WL 8457019, at *6 (D.Md. Aug. 22, 2006) ("Plaintiff's insubordination severs the causal link between his protected activity and his termination."). Here, the day before McAlpine punished Hoffman by placing him in administrative segregation, Browning conducted an interview with Hoffman in which Hoffman exhibited behavior that caused Browning some level of concern about Hoover's safety. Regardless of whether Browning's reaction was reasonable, this is precisely the sort of intervening conduct that can erode an inference of causation, as it provides a legitimate, non-retaliatory reason for NBCI's conduct.

Hoover further argues that she cannot be held liable for the decision to place Hoffman in administrative segregation because that decision was made not by her, but by McAlpine. The Court notes that that this argument may not hold water; as the Fourth Circuit has explained, under the "cat's paw" theory of liability for retaliation, traditionally applied in the context of employment claims, if an employer imposes an adverse action on an employee because it was prompted to do so by a supervisor who, in turn, was motivated

10

by unlawful animus, then that supervisor's unlawful animus is imputed to the employer. See Staub v. Proctor Hosp., 562 U.S. 411, 422 (2011); see also Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 290 (4th Cir. 2004) ("When a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker."), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). Although the Court can find no case in which this Court or the Fourth Circuit has extended the cat's paw theory of liability to First Amendment retaliation cases outside of the employment context, the Court sees no reason why this well-grounded theory of causation should not apply to such claims. Thus, to the extent Hoffman adduced evidence demonstrating that Hoover influenced McAlpine to place Hoffman in administrative segregation because of Hoffman's ARP complaint, such evidence would be sufficient for Hoffman to survive summary judgment.

Hoffman has failed, however, to provide such evidence to the Court. Instead, Hoffman's argument regarding Hoover's influence over McAlpine is, at its core, entirely rooted in speculation that NBCI officials lied or obfuscated in their sworn testimony. For example, McAlpine unambiguously stated in his deposition that he did not speak with Hoover until after sending Hoffman to administrative segregation. (McAlpine Dep. at 79:3–80:18). Hoover does not recall speaking with anyone concerning Hoffman's ARP and insists she played no role in placing him in administrative segregation. (Hoover Dep. at 40:20–53:13, 59:6–60:20). Browning concedes that he spoke with Hoover at some point concerning Hoffman's ARP, but Hoffman adduced no testimony concerning the date of

that conversation. Thus, all the evidence before the Court concerning whether Hoover even had a conversation with McAlpine or Browning prior to McAlpine placing Hoffman in administrative segregation—let alone whether, during such a conversation, Hoover became aware that Hoffman had filed an ARP complaint against her and pressured McAlpine or others to punish Hoffman in response—suggests that no such conversation took place. Accordingly, Hoffman's only argument is that McAlpine and Hoover are lying or obfuscating in their sworn testimony, and that in fact Hoover had the opportunity to and did influence McAlpine to punish Hoffman.

Such speculation is insufficient to establish a genuine dispute of material fact. See Angelini v. Balt. Police Dep't, 464 F.Supp.3d 756 (D.Md. 2020) ("[U]nsupported speculation is not sufficient to defeat a summary judgment motion."); Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."); TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1158 (Fed. Cir. 2004) ("Summary judgment should not be denied simply because the opposing party asserts that the movant['s] witnesses are not to be believed."); Otey v. Marshall, 121 F.3d 1150, 1151 n.1 (8th Cir. 1997) ("[A] party litigant may not generate a question of material fact out of uncontradicted evidence merely by speculating that a witness is lying."); Dawson v. Dorman, 528 F.App'x 450, 452 (6th Cir. 2013) ("[Plaintiff] cannot survive summary judgment simply by stating that a jury could disbelieve [Defendant's] testimony[.]"); Bruder v. Moniz, 51 F.Supp.3d 177, 191 (D.D.C. 2014) ("[Plaintiff's] mere speculation

that [a witness] must be lying because her statement is not as specific as he would like it to be is not sufficient to show a genuine dispute of material fact."). This is not a case where two parties present different factual narratives of an event they both witnessed or experienced. Rather, this is a case where one party, Hoover, has offered testimonial evidence supporting a fact narrative, and the other party, Hoffman, calls on this Court to find a genuine issue of material fact regarding whether that testimony was truthful.[3] The Court declines to do so. See Beale, 769 F.2d at 214 (noting that a nonmovant may not create a genuine dispute of material fact "through mere speculation or the building of one inference upon another").

The Court understands Hoffman's frustration with the events underlying this dispute. The facts in the record indicate that NBCI treated Hoffman unfairly when McAlpine placed him in administrative segregation for allegedly posing a threat to Hoover when neither Hoover nor Browning actually believed Hoffman posed a threat at the time. But unfair treatment does not always constitute unlawful treatment. And Hoffman has failed to introduce evidence into the record creating a genuine issue of material fact as to

---

[3] In addition to speculation that NBCI officials are being untruthful in their testimony, Hoffman spends several pages of his Opposition describing apparent misstatements of fact that appear in a report written in March 2017 by Captain Joseph Cutter. (See Mar. 16, 2017 Mem. at 1–2, ECF No. 109-9). For example, the March 2017 report indicates that Hoffman "stated that he wished bad things on NP Pierce during an ARP Interview," (id.), but as Browning's testimony indicates, Hoffman made no such statement. But Hoffman does not clearly explain in his Opposition how or why the report, which was written several months after his administrative segregation ended, suggests that his punishment was rooted in Hoover's retaliatory animus. In the absence of such a connection, the Court finds that the report has minimal evidentiary value in this case.

whether his ARP complaints caused him to be placed in administrative segregation. Accordingly, the Court must grant summary judgment to Hoover.

### III.     CONCLUSION

For the foregoing reasons, the Court will grant Hoover's Motion for Summary Judgment (ECF No. 105). A separate Order follows.

Entered this 25th day of March, 2022.

/s/
George L. Russell, III
United States District Judge
